# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN J. SHARKEY, | ) | CASE NO. 5:16-cv-837 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Proceeding *pro se*, plaintiff John J. Sharkey ("plaintiff" or "Sharkey") has brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552a, to compel disclosure by defendant Federal Bureau of Investigation ("FBI") of records he believes will demonstrate that he has suffered harassment and various other injustices as a result of his efforts to investigate alleged insider trading by President Barack Obama and others. The FBI previously responded to plaintiff's successive requests under the FOIA by advising plaintiff that it searched its main file records but was unable to locate any documents responsive to his requests. Defendant now moves for summary judgment, maintaining it satisfied its obligations under the FOIA with respect to two of plaintiff's requests, and that plaintiff failed to exhaust his administrative remedies as to his third request. (Doc. No. 28 ["MSJ"].) Plaintiff did not file a response to defendant's dispositive motion, and the time for responding has passed. For the reasons set forth below, the Court will grant defendant's motion.

I. **BACKGROUND**

In his complaint, plaintiff alleges that, since 2009, he has been supplying the FBI with

tips regarding widespread insider trading, and that these tips have led to the unearthing of "a large number, potentially thousands, of some of the wealthiest and most powerful people and organizations in America. Included in this group were former elected officials, [and] public figures, to the highest offices in the land." (Doc. No. 1 (Complaint ["Compl."]) ¶ 14.) He believes that there has been a concerted effort in the government to interfere with his "whistleblowing" efforts in order to deny bounties due him by the Securities Exchange Commission ("SEC"). (*Id*. ¶ 15.) Specifically, he maintains that he has been the victim of "cyber hacking" designed "to associate [his] usage of the University of Akron's online Law Library with the visitation of pornographic websites by [his] Guest Library Account," vandalism, and stalking by "individuals apparently intent in observing [his] offline activities[.]" (*Id*. ¶¶ 18, 19.)

### A. The FBI's Central Records System

The FBI maintains a Central Record System ("CRS") which is a database of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained in the course of fulfilling its law enforcement, counterterrorism, and intelligence duties. (Doc. No. 28-2 (Declaration of David M. Hardy ["Hardy Decl."]) ¶ 33.) The CRS spans the entire FBI organization, including its headquarters and field offices worldwide. (*Id*.) "The CRS consists of a numerical sequence of files, called FBI 'classifications,' which are organized according to designated subject categories. The broad array of CRS file classification categories include types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters." (*Id*. ¶ 34.)

The CRS is indexed in such a way as to permit navigation through the substantial

information contained within the system. "The general indices are arranged in alphabetical order and comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval." (*Id*. ¶ 35.) The entries in the general indices consist of "main" entries (records indexed to the main file records) and "reference" entries (records that merely mention an individual or other subject matter). (*Id*. ¶ 35.)

Automated Case Support ("ACS") is "an electronic, integrated case management system that became effective . . . on October 1, 1995." (*Id*. ¶ 37.) Over 105 million CRS records were converted from the previous automated systems into a "single, consolidated case management system accessible by all FBI offices." (*Id*.) ACS was specifically designed for the "operational purpose and design to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its myriad missions and functions." (*Id*., footnote omitted.)

The Universal Index ("UNI") is the "automated index of the CRS and provides all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching." (*Id*. ¶ 38.) The UNI permits individual names to be recorded with applicable identifying information "such as date of birth, race, sex, locality, Social Security Number, address and/or date of an event." (*Id*.) "Moreover, ACS implementation built upon and incorporated prior automated FBI indices; therefore, a search employing the UNI application of ACS encompasses data that was already indexed into the prior automated systems superseded by ACS." (*Id*.) An index search using the UNI can search documents from 1995 to the present, and contains "approximately 114.3 million searchable records and is updated daily with newly indexed material." (*Id*.)

"Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012." (*Id*. ¶ 39.) Sentinel "provides a web-based interface" and, after July 1, 2012, "all FBI generated records are created electronically in case files via Sentinel[.]" (*Id*.) While Sentinel "builds on ACS and shares its operation purpose," it did not replace ACS, and it simply serves as "another portal to locate information within the vast CRS for FBI records[.]" (*Id*.)

### B. Plaintiff's FOIA Requests

#### 1. Request No. 1337222-000

Plaintiff directed to the FBI three separate FOIA document requests seeking to uncover evidence of alleged covert activities. On September 14, 2015, plaintiff submitted, by email, a FOIA request for any and all records concerning a tire slashing incident that occurred on April 7, 2015. (*Id*. ¶ 5.) A follow-up email was sent on September 22, 2015. This subsequent email was used to open the FBI file, and also referenced a September 14, 2015 conversation with a customer of the establishment where plaintiff worked. (*Id*., citing Doc. No. 28-3 (9-22-15 Sharkey Email).) By letter dated September 29, 2015, the request was docketed as "FOIPA Request Number 1337222-000." (*Id*. ¶ 6, citing Doc. No. 28-4 (9-29-15 FBI Docketing Letter).) The letter advised plaintiff that his request did not contain sufficient information from which to conduct an accurate search of the CRS, and asked plaintiff to provide certain personal identifying information to facilitate the search. (*Id*.)

Plaintiff provided the requested identifying information on or about October 8, 2015, including the date and estimated time that plaintiff's tires were allegedly slashed, as well as the location of the incident. (*Id*. ¶ 8, citing Doc. No. 28-6 (Certificate of Identity Form).) The

additional information also referenced a September 14, 2015 conversation with a customer of the establishment where plaintiff worked. (*Id*.) Based on the information supplied by plaintiff, an employee of the Record/Information Dissemination Section ("RIDS") of the Records Management Division ("RMD") of the FBI formulated a CRS index search employing the UNI application of ACS and a Sentinel index search using three variations of plaintiff's name— "Sharkey, John James", "Sharkey John J.", and "Sharkey, John"—for the time period from April 7, 2015 to September 14, 2015. The search also included a three-way phonetic breakdown of Mr. Sharkey's name. (*Id.* ¶ 41.) The search did not identify any responsive documents, and plaintiff was advised of the negative results in a letter dated October 14, 2015. (*Id*. ¶¶ 9, 41, citing Doc. No. 28-7 (10-14-15 FBI Results Letter).)

On October 18, 2015, plaintiff filed an administrative appeal through the Department of Justice's Office of Information Policy ("OIP"). (*Id*. ¶ 10, citing Doc. No. 28-8 (10-18-15 Appeal Request).) On October 22, 2015, the OIP acknowledged receipt of the administrative appeal and assigned Appeal Number AP-2016-00142 to it. (*Id*. ¶ 11, citing Doc. No. 28-9 (10-22-15 OIP Docketing Letter).) By letter dated November 17, 2015, plaintiff was advised that the OIP was affirming the FBI's action on his FOIA request. (*Id*. ¶ 12, citing Doc. No. 28-10 (11-17-15 OIP Decision Letter).)

2. <u>Request No. NFP-50032</u>

Also on September 14, 2015, plaintiff submitted a FOIA request containing nineteen (19) individual requests for information concerning various potential crimes committed against plaintiff, and various alleged stalking incidents noticed by plaintiff. (*Id*. ¶ 14, citing Doc. No. 28-11 (9-14-15 Sharkey Letter).) Plaintiff was informed that the FBI was in receipt of his FOIA

request and that it had been docketed as Request Number NFP-50032. (*Id*. ¶ 15, citing Doc. No. 28-12 (9-25-15 OIP Docketing Letter).) The letter further advised plaintiff that the information he was seeking was not "reasonably described" such that an accurate search could be conducted, and recommended certain specific information that would assist in locating potentially responsive records. (*Id*.)

Plaintiff sent several emails, between September 24, 2015 and September 29, 2015, attempting to provide more information regarding two individuals he believed had been stalking him. (*Id*. ¶ 16, citing Doc. No. 28-13 (Email Chain).) He sought to further amend his document request by sending a letter on October 9, 2015 asking to "separate and expedite records requests one and sixteen" and elaborating on examples of "various serial felonies against himself by a person or persons associated with and/or in the family of President Barack Obama." (*Id*. ¶ 17, citing Doc. No. 28-14 (10-9-15 Sharkey Letter).) Plaintiff continued to communicate, via email, with the FBI regarding these requests. Notwithstanding these attempts to revise his requests, the FBI maintained that the requests remained too vague and broad to permit a specific search that could potentially yield responsive documents. (*Id*. ¶ 43.)

Before the FBI could respond to his last attempt to clarify his FOIA requests, Sharkey filed an administrative appeal to OIP apparently to challenge the FBI's request for more information. (*Id*. ¶ 19, citing Doc. No. 28-16 (11-16-15 Appeal).) OIP acknowledged the appeal and assigned it Appeal Number AP-2016-00627. (*Id*. ¶ 22, citing Doc. No. 28-19 (11-23-15 OIP Docketing Letter).) Because all 19 requests sought records relating to incidents involving Sharkey, OIP interpreted his FOIA request as seeking records concerning himself. (*Id*. ¶¶ 24, 43, citing various record exhibits.) OIP informed plaintiff that, subsequent to his appeal, the FBI

conducted a search, but still could not locate records responsive to his inquiry. (*Id*. ¶ 24, citing Doc. No. 28-21 (2-17-16 OIP Decision Letter).) Accordingly, OIP held that the FBI had "conducted an adequate, reasonable search for [responsive] records." (2-17-16 OIP Decision Letter at 402.)

3. Request No. 1347984-000

Plaintiff's third FOIA request was submitted in a letter, dated March 25, 2016, and sought FBI records regarding himself from April 2012 through April 2016. (*Id*. ¶ 26, citing Doc. No. 28-22 (3-25-16 Sharkey Letter).) The FBI acknowledged receipt of the letter and assigned it Request Number 1347984-000. (*Id*. ¶ 27.) On April 7, 2016, RIDS conducted a CRS index search for responsive documents employing both the FBI's UNI application of ACS and a Sentinel index search. Once again, the FBI searched three variations on plaintiff's name and three phonetic spellings of his name, this time for the time period from April 2012 through April 7, 2016, in order to identify potentially responsive records. (*Id*. ¶ 43.) On April 7, 2016, plaintiff was informed that the search of the CRS failed to locate any responsive records. (*Id*. ¶ 27, citing Doc. No. 28-23 (4-7-16 FBI Results Letter).)

On April 14, 2016, plaintiff administratively appealed from this determination, and the appeal was assigned appeal number AP-2016-002433. (*Id*. ¶¶ 29-30, citing Doc. No. 28-24 (4-14-16 OIP Docketing Letter), Doc. No. 28-25 (4-19-16 OIP Letter).) After reviewing the search, OIP issued a decision letter on May 27, 2016, affirming the negative results, and affirming the adequacy of the FBI's search.[1] (*Id*. ¶ 32, citing Doc. No. 28-26 (5-27-16 OIP Decision Letter).)

---

[1] OIP further advised plaintiff that, to the extent his request sought access to records that would either confirm or deny an individual's placement on any government watch list, the FBI properly refused to confirm or deny the existence of any responsive records because the existence of such records is protected from disclosure pursuant to 5 U.S.C. § 552a(j)(2) and 5 U.S.C. § 552(b)(7)(E). (*Id*.)

7

## C. Plaintiff's FOIA Lawsuit

Plaintiff filed the present lawsuit in federal court on April 8, 2016, challenging the FBI's action regarding his first two FOIA requests. The Court referred the matter to the magistrate judge for general pretrial supervision. On May 6, 2016, plaintiff filed an "addendum" to the complaint wherein he requested that the Court "include a further FBI records request determination appeal (DOJ-AP-2016-002433) now pending with, according to an attorney with the OIP, an expected determination by June 10, 2016." (Doc. No. 8 (Addendum) ¶ 11.)[2] On December 16, 2016, the FBI filed the present motion for summary judgment, which, as the Court has observed, is unopposed. In its motion, defendant maintains that it is entitled to judgment, as a matter of law, because plaintiff failed to exhaust his administrative remedies with respect to his third request, and because it employed methods reasonably expected to produce the information requested as to his first two requests.

## II. APPLICABLE STANDARDS

### A. Summary Judgment

Defendant's motion brings into play several applicable legal standards, and the Court begins with Rule 56 of the Federal Rules of Civil Procedure. Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a

---

[2] The Court construes this filing as an amendment to the complaint, filed pursuant to Fed. R. Civ. P. 15(a).

genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, the Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he

trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material Fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992) (citation omitted). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*. (citation omitted).

Where (as here) a summary judgment motion is unopposed, "'a court's reliance on the facts advanced by the movant is proper and sufficient[.]" *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000) (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992)). Nonetheless, the Court must still "intelligently and carefully review the legitimacy of such an unresponded-to motion," and it must disregard any factual assertions that are either misstated or taken out of context. *Guarino*, 980 F.2d at 407.

B. **FOIA Actions**

"FOIA cases typically and appropriately are decided on motions for summary judgment." *ViroPharma Inc. v. Dep't of Health & Human Servs.*, 839 F. Supp. 2d 184, 189 (D.D.C. 2012) (citations omitted); *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001) ("Procedurally, district courts typically dispose of FOIA cases on summary judgment before a plaintiff can conduct discovery.") (citation omitted). To prevail on summary judgment in a FOIA case, the "government must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information' . . .

." *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012 (quoting *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011)).

"At all times the burden is on the agency to establish the adequacy of its search[,]" although it "may rely on affidavits or declarations that provide reasonable detail of the scope of the search." *Rugiero*, 257 F.3d at 547 (citations omitted). Furthermore, "[i]n the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Id*. (quoting *Bennett v. Drug Enforcement Admin.*, 55 F. Supp. 2d 36, 39 (D.D.C. 1999)) (alteration in original) (internal quotation marks omitted). This standard comports with the traditional notion that, to defeat a motion for summary judgment, "the non-movant must show sufficient evidence to create a genuine issue of material fact," *id*. at 543, and "on which the jury could reasonably find for the [non-movant]." *Id*. (alteration in original) (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted); *see also Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 118 (D.D.C. 2010) ("In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that it conducted a search of records in its custody or control, *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150-51, 100 S. Ct. 960, 63 L. Ed. 2d 267 (1980), that was reasonably calculated to uncover all relevant information[.]" (internal citation omitted)).

### III. ANALYSIS

#### A. **Exhaustion of Remedies**

As an initial matter, defendant argues that plaintiff has failed to exhaust his administrative remedies with respect to his third request, Request Number 1347984-000. "Courts

have consistently confirmed that the FOIA requires exhaustion of the appeal process before an individual may seek relief in the courts." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61-62 (D.C. Cir. 1979) (collecting cases). The exhaustion requirement affords the agency "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Id.* at 61 (citing *McKart v. United States*, 395 U.S. 185, 194, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969)). It also "allows the top managers of an agency to correct mistakes made at lower levels and thereby obviates unnecessary judicial review." *Id*. (citing *McKart*, 395 U.S. at 194). "The exhaustion requirement is considered to be a jurisdictional prerequisite in the Sixth Circuit." *Miller v. Fed. Elections Comm'n*, No. 1:12-cv-242, 2013 WL 4243044, at *4 (S.D. Ohio Aug. 15, 2013) (citing, among authority, *Reisman v. Bullard*, 14 F. App'x 377, 379 (6th Cir. 2001)); *see Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005) ("Exhaustion of administrative remedies is a threshold requirement to a FOIA claim."); *Iskander v. F.B.I.*, No. 4:12CV02653, 2013 WL 1572439, at *4 (N.D. Ohio Apr. 12, 2013) ("A plaintiff's failure to exhaust administrative remedies precludes a federal court from exercising subject-matter jurisdiction over the party's FOIA claims.") (citation omitted).

The FOIA provides for an administrative appeal following an agency's decision regarding a FOIA request. *Sloman v. U.S. Dep't of Justice*, 832 F. Supp. 63, 66 (S.D.N.Y. 1993). Once the requestor files an administrative appeal, the FOIA allows the agency twenty (20) working days to make a decision. 5 U.S.C. § 552(a)(6)(A)(ii). In this case, plaintiff filed his administrative appeal to OIP on April 14, 2016, regarding the FBI's decision on Request Number 1347984-000. (Hardy Decl. ¶ 29, citing 4-14-15 Docketing Letter.) Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), OIP had 20 days, excluding weekends and legal holidays, to resolve the appeal.

12

However, on May 6, 2016, only 16 days after the administrative appeal was docketed, plaintiff amended his complaint to include this third FOIA request. Because exhaustion is a jurisdictional prerequisite in the Sixth Circuit, the Court is without jurisdiction to entertain this claim and it is properly dismissed.[3] *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (because the "plain language of the statute makes "exhaustion a precondition to filing an action in federal court," the "prisoner . . . may not exhaust administrative remedies during the pendency of the federal suit") (internal quotes and citations omitted).

B.  **Adequacy of the Searches**

As previously observed, "[t]he adequacy of an agency's search is measured by a standard of reasonableness under the attendant circumstances." *Dillon*, 102 F. Supp. 3d at 282 (citation omitted). "There is no requirement that an agency search every record system in response to a FOIA request; rather, it may limit its search to only those locations where responsive documents are likely to be maintained." *Id.* at 282 (citing *Porter v. CIA*, 778 F. Supp. 2d 60, 69-70 (D.D.C. 2001)); *Flowers v. I.R.S.*, 307 F. Supp. 2d 60, 67 (D.C.C. 2004) (citations omitted). Moreover, the adequacy of the search is not measured by the results, "but by the method of the search itself[.]" *Span*, 696 F. Supp. 2d at 121 (citing, among authority, *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Agency affidavits or declarations setting forth the circumstances surrounding the

---

[3] The Court notes that the Sixth Circuit's unreported decision in *Reisman* represents the minority view, and that the majority of courts to consider the issue have concluded that exhaustion "is a prudential consideration, not a jurisdictional prerequisite[.]" *Flowers v. I.R.S.*, 307 F. Supp. 2d 60, 66 (D.C.C. 2004) (citing *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004)); *Oglesby*, 920 F.2d at 61 (citations omitted). Those courts that view the requirement as a prudential one consider exhaustion to be a "condition precedent" to filing suit, treating it as an "element of a FOIA claim, which, as with all elements of any claim, must be proved by the plaintiff in order to prevail." *Bruzon v. Drug Enforcement Admin.*, 576 F. Supp. 2d 1, 3 (D.D.C. 2008).

agency's efforts to respond to the FOIA request are entitled to a presumption of good faith. *See id.* at 119 (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). "Speculative claims about the existence of additional documents are insufficient to rebut the presumption of good faith accorded agency affidavits." *Id.* (citing *Flowers*, 307 F. Supp. 2d at 67). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Id.* (citing *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142, 109 S. Ct. 2841, 106 L. Ed. 2d 112 (1989)).

In support of its position that it fully complied with the FOIA in responding to plaintiff's requests for information, defendant offers the declaration of David M. Hardy, the Section Chief of the RIDS of the RMD. (Hardy Decl. ¶ 1.) Hardy has held this position since 2002, and in this capacity, he supervises 249 employees whose "collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA," and other relevant statutes, executive orders, and decisions. (*Id.* ¶ 2.)

With respect to the first request—Request No. 1337222-000—Hardy explains that RIDS searched the CRS because this is "where the FBI indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval." (*Id.* ¶ 42.) He represents that, given the fact that the first request sought information concerning a specific incident of tire slashing on April 7, 2015 and a conversation with a customer on September 14, 2015, "such information would reasonably be expected to be located in the CRS via the index search methodology." (*Id.*)

As for the second search—Request No. NEP-50032—Hardy explains that plaintiff failed

to provide sufficient information that would have been searchable within the FBI's databases. (*Id.* ¶ 43.) Nonetheless, because all of the inadequately described requests pertained to plaintiff, the RIDS formulated a comprehensive search of ACS and Sentinel for any and all records pertaining to plaintiff between April 2012 and April 7, 2016. According to Hardy, "[i]f such records existed, it is reasonable to assume that they would be indexed to plaintiff in the CRS." (*Id.*).

Hardy's declaration describes in detail the FBI's CRS (as well as other relevant databases and indices), and the methods used to search for records in general and with respect to plaintiff's records requests. Based upon the searches described in the declaration, the Court finds that the declaration sets forth sufficient factual detail of the methods utilized in conducting the searches for responsive documents for the Court to conclude that the FBI "'has conducted [searches] reasonably calculated to uncover all relevant documents.'" *Dillon*, 102 F. Supp. 3d at 284 (quoting *Elliott v. U.S. v. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010)). Plaintiff has made no attempt to offer subject evidence to refute the FBI's declaration or to show any bad faith that might overcome the presumption afforded the declaration. Further, the Court has reviewed the record in this case and finds no evidence that would demonstrate bad faith on the part of the FBI. Having determined that the FBI's methods could be "reasonably expected to produce the information requested," the Court finds the FBI complied with its obligations under the FOIA and is entitled to summary judgment. *Oglesby*, 920 F.2d at 68.

IV. CONCLUSION

For the reasons stated herein, as well as those set forth in defendant's dispositive motion, defendant's motion for summary judgment is granted, and this case is dismissed.

**IT IS SO ORDERED**.


Dated: August 4, 2017

                                           **HONORABLE SARA LIOI**
                                           **UNITED STATES DISTRICT JUDGE**